# UNITED STATES DISTRICT COURT
for the
**Eastern District of Kentucky**
**Frankfort Division**

| | | |
|---|---|---|
| Monica Yaroma | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| CashCall, Inc. | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     National Registered Agents, Inc. | ) | |
|     306 W. Main Street | ) | |
|     Suite 512 | ) | |
|     Frankfort, KY 40601 | ) | |
| | ) | |
| Delbert Services Corporation | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     National Registered Agents, Inc. of Nevada | ) | |
|     311 S. Division Street | ) | |
|     Carson City, NV 89703 | ) | |
| | ) | |
| Experian Information Solutions, Inc. | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     C T Corporation System | ) | |
|     306 W Main Street | ) | |
|     Suite 512 | ) | |
|     Frankfort, KY 40601 | ) | |
| | ) | |
| Western Sky Financial, LLC | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Martin A. Webb | ) | |
|     612 E Street | ) | |
|     Timber Lake, SD 57656 | ) | |

# COMPLAINT and DEMAND FOR JURY TRIAL

### Introduction

1. This is an action brought by a consumer for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"); and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). This claim also seeks declaratory relief.

2. Finding herself in dire financial straits and desperate for funds, Plaintiff Monica Yaroma took out a personal consumer loan with Western Sky Financial, LLC. The Western Sky loan was onerous, carrying a usurious 138.91% APR. This was an online loan. Western Sky has not registered to do business as a consumer loan company in Kentucky. Western Sky has no physical presence or branches in the Commonwealth of Kentucky. Consequently, the loan is void and Ms. Yaroma's liability on the loan is strictly limited to the principal amount of the loan. KRS 286.4-991. Ms. Yaroma has paid the principal amount in full and therefore asks the Court to declare that she has no obligation under the consumer loan agreement to Western Sky.

3. Upon information and belief, Western Sky referred Ms. Yaroma's loan to Delbert Services Corporation ("Delbert") and/or CashCall, Inc. for servicing. Delbert and/or CashCall processed Ms. Yaroma's payments. After paying more than the principal amount on the Western Sky loan, Ms. Yaroma found that she could not keep up the payments and eventually stopped paying Western Sky.

4. Delbert sent Ms. Yaroma many emails and/or letters in connection with the Western Sky loan. Most of these were pitched as offers to "help" Ms. Yaroma. The offers included a restructuring of the payment due dates on the loan and a reduction of the interest to 71.00% per annum. In addition to sending collection letters/offers to Ms. Yaroma, Delbert also furnished negative information concerning Ms. Yaroma to one or more consumer reporting agencies, including Experian Information Solutions, Inc. ("Experian").

5. Ms. Yaroma, by counsel, sent a dispute letter to Experian. In her letter, Ms. Yaroma informed Experian that the interest on the loan was usurious and therefore interest under the loan was void and uncollectable. Experian forwarded or should have forwarded Ms. Yaroma's dispute to Delbert to reinvestigate the information it furnished concerning Ms. Yaroma. Delbert responded to notification of the dispute by verifying the information as accurate. Experian continued to report the information concerning Ms. Yaroma and the Western Sky loan as furnished by Delbert. That is, Experian made no changes as the result of Ms. Yaroma's dispute.

### Jurisdiction and Venue

6. Jurisdiction of this court arises under 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, and 28 U.S.C. § 1331. Declaratory relief is available pursuant to 28 U.S.C. § 2201. Venue is proper, because many of the relevant events affected and/or damaged a consumer living within Jefferson County, Ky., which is located within this District. Plaintiff requests that the Court take supplemental jurisdiction over her state-law claims under 28 U.S.C. § 1367(a).

## PARTIES

7. Plaintiff Monica Yaroma is a natural person who resides in Shelby County, Ky. Ms. Yaroma is a "consumer" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3) and the Kentucky Consumer Protection Act.

8. Defendant CashCall, Inc. is a California corporation with its principal place of business in Anaheim, California. CashCall transacts business in Kentucky and within this judicial district by offering, originating, and collecting payments on personal consumer and payday loans to consumers in Kentucky. CashCall also services consumer debts on behalf of other entities such as Western Sky, which makes CashCall a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6)

9. Defendant Delbert Services Corporation is a Nevada corporation. Delbert regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6), and a "furnisher" of information within the meaning of the FCRA. 15 U.S.C. § 1681 *et seq.*

10. Defendant Experian Information Solutions, Inc. is a foreign corporation, with its principal place of business located at 475 Anton Blvd., Costa Mesa, CA 92626. Experian has registered to do business with Kentucky Secretary of State. Experian is a "consumer reporting agency" within the meaning of the FCRA.

11. Defendant Western Sky Financial, LLC is a South Dakota limited liability company with its principal place of business located at 612 E Street, Timber Lake SD 57656. Western Sky transacts business in Kentucky and within this judicial district by offering, originating, servicing, and collecting payments on personal consumer loans to consumers in Kentucky.

## STATEMENT OF FACTS

**I.   The Western Sky Consumer Loan**

12. On or about August 27, 2012, Ms. Yaroma entered into a consumer loan agreement with Western Sky Financial, LLC.

13. Ms. Yaroma used the funds obtained from the Western Sky consumer loan for personal, family, or household purposes, which makes the Western Sky consumer loan a "debt" within the meaning of the FDCPA.

14. The Western Sky consumer loan falls within the meaning of "trade" and "commerce" as defined in the Kentucky Consumer Protection Act. KRS 367.110(2).

15. The Western Sky consumer loan agreement set forth the following terms:

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you | The amount you will have paid after all payments are made as scheduled |
| 138.91 % | $11,353.62 | $2,525.00 | $13,878.62 |

PAYMENT SCHEDULE

One payment of $333.46 on October 01, 2012.
46 monthly payments of $294.46 beginning on November 01, 2012.

Late Charge:  If a payment is more than 15 days late, you will be charged $29.00.

Prepayment:  If you pay off this loan early, you will not have to pay any penalty.

Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

16. Western Sky has not registered as a consumer loan company with the Kentucky Department of Financial Institutions.

17. Upon information and belief, Western Sky does not have any physical branches or presence in the Commonwealth of Kentucky.

18. CashCall may have previously registered as a consumer loan company with the Kentucky Department of Financial Institutions, but if it did, it has surrendered its license.

19. Delbert has not registered as a consumer loan company with the Kentucky Department of Financial Institutions.

**II.    The Western Sky Consumer Loan is Void**

20. Western Sky engaged in an unlicensed consumer loan business within the Commonwealth of Kentucky.

21. Western Sky took advantage of Ms. Yaroma's desperate financial situation by extending her loan at a usurious and illegal interest rate in violation of Kentucky law.

22. The Western Sky consumer loan is void.

23. KRS 286.4-420 provides in pertinent part:

> No person shall, without first obtaining a license from the commissioner, engage in the business of making loans in the amount or of the value of fifteen thousand dollars ($15,000) or less at a greater rate of interest, or consideration therefor than otherwise permitted by law.

24. 3% per month or 36% per annum is the maximum allowable interest rate for consumer loans under Kentucky law.

25. KRS 286.4.530(1) provides in pertinent part:

> Every licensee may lend any sum of money not exceeding fifteen thousand dollars ($15,000), excluding charges, and may charge, contract for, and receive thereon charges not in excess of three percent (3%) per month on any loan where the original principal amount of the loan is not in excess of three thousand dollars ($3,000) and two percent (2%) per month on any loan where the original principal amount of the loan exceeds three thousand dollars ($3,000).

26. Consumer loans made by unlicensed consumer loan companies are void and unenforceable.

27. Consumer loans made in excess of the interest rate allowed by KRS 286.4.530(1) are void and unenforceable.

28. KRS 286.4-991(1) provides in pertinent part:

> Any loan contract made in violation of this subtitle shall be void and the lender shall have no right to collect any principal, charges or recompense whatsoever.

29. Therefore, the Western Sky consumer loan is void, unenforceable against, and uncollectible from Ms. Yaroma.

### III. Transfer and Servicing of the Western Sky Consumer Loan

30. Upon information and belief, shortly after the loan was finalized, Western Sky referred and/or sold the loan to CashCall for servicing. *See Consumer Financial Protection Bureau v. CashCall, Inc.*, First Amended Complaint at ¶¶35-39, dkt. 1:13-cv-12167 (D.Mass. March 3, 2014).

31. Upon information and belief, CashCall debited payments on the Western Sky consumer loan from Ms. Yaroma's bank account.

32. As of the date of the filing this Complaint, Ms. Yaroma has paid a total of $3,693.24 on the Western Sky loan, which financed $2,525.00.

33. Upon information and belief, CashCall referred Ms. Yaroma's consumer loan to Delbert for servicing.

34. Upon information and belief, Delbert did not send Ms. Yaroma written or other notice that included the information required by 15 U.S.C. § 1692g.

35. On July 2, 2014, Delbert sent Ms. Yaroma a dunning letter in an attempt to collect the Western Sky consumer loan.

36. The July 2nd dunning letter offered to modify the Western Sky consumer loan by deferring payments on the loan and changing the loan's maturity date.

37. The modification agreement did not alter the interest rate applicable to the loan.

38. Delbert falsely represented the amount of the due on the loan as $2,550.69.

39. Delbert's representation of the amount of the loan was false because it included accrued interest on the loan at the usurious and illegal rate of 138.91%.

40. Delbert's July 2nd dunning letter did not inform Ms. Yaroma that the loan was void because Western Sky was an unlicensed consumer loan company and because the interest rate was usurious and illegal.

41. On August 2, 2014, Delbert sent Ms. Yaroma another dunning letter and modification agreement.

42. The modification agreement in the August 2nd dunning letter offered to modify the Western Sky consumer loan by reducing the interest rate to 71.00% per annum.

43. Delbert's August 2nd dunning letter falsely represented the amount of the due on the loan as $2,550.69.

44. Delbert's representation of the amount of the loan was false because it included accrued interest on the loan at the usurious and illegal rate of 138.91%.

45. Delbert's August 2nd dunning letter did not inform Ms. Yaroma that the loan was void because Western Sky was an unlicensed consumer loan company and because the interest rate was usurious and illegal.

46. On September 3, 2014, Delbert sent Ms. Yaroma a dunning email in attempt to collect the Western Sky consumer loan.

47. Delbert's September 3rd dunning letter falsely represented that $3,359.68 was the current amount due on the Western Sky consumer loan or $808.99 more than Delbert claimed was due on the loan a month before.

48. Delbert's September 3rd dunning letter offered to settle the alleged debt with three different payment options.

49. On October 2, 2014, Delbert sent Ms. Yaroma another dunning email which was very similar to the September 3rd dunning letter, except that Delbert falsely represented that $3,558.57 was the current amount due on the Western Sky consumer loan.

50. On October 27, 2014, Delbert sent Ms. Yaroma another dunning letter with yet another offer to modify the Western Sky consumer loan.

51. In the October 27th dunning letter, Delbert falsely represented that $2,550.69 was the current amount due on the Western Sky consumer loan.

52. On January 2, 2015, Delbert sent Ms. Yaroma an email advising her that it had transferred the servicing of the Western Sky consumer loan to CashCall, Inc.

53. As part of its efforts to collect the Western Sky consumer loan from Ms. Yaroma, Delbert furnished negative credit information concerning Ms. Yaroma and the Western Sky loan to consumer reporting agencies including Defendant Experian.

54. According to the negative credit information furnished by Delbert, Delbert opened the account in August 2013 and began reporting information on the account in September 2013.

55. Further, according to the negative credit information furnished by Delbert, $2,600 was the original balance of the account and $2,550.00 was the balance due on the account as of August 2014.

56. Finally, according to the negative credit information furnished by Delbert, Delbert purchased the account from CashCall, Inc.

57. Delbert furnished negative credit information concerning Ms. Yaroma and the Western Sky consumer loan for purposes of a collecting a debt from her. ("Reporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms." *Sullivan v. Equifax, Inc.*, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002).

**IV.     Ms. Yaroma's Dispute**

58. On July 17, 2014, Ms. Yaroma, by counsel, sent a dispute letter to the three major consumer reporting agencies, including Defendant Experian.

59. The July 17th dispute letter disputed the negative credit information concerning Ms. Yaroma and the Western Sky consumer loan as furnished by Delbert.

60.     The July 17th dispute letter noted the 138.91% interest rate of the Western Sky consumer loan and that this interest rate was usurious under Kentucky law and that the loan was therefore void and unenforceable.

61.     Upon information and belief, Experian notified Delbert concerning Ms. Yaroma's dispute, which triggered Delbert's duty to re-investigate the debt under 15 U.S.C. § 1681s-2(b).

62.     After receiving Ms. Yaroma's dispute, Experian continued to report derogatory information concerning Delbert and the Western Sky consumer loan on Ms. Yaroma's consumer credit report.

63.     Upon information and belief, Delbert failed to conduct a reasonable investigation into Ms. Yaroma's dispute concerning the negative credit information Delbert is furnishing to Experian concerning the Western Sky consumer loan.

64.     Upon information and belief, Delbert falsely verified the accuracy of the Western Sky consumer loan to one or more consumer reporting agencies.

65.     Upon information and belief, Experian failed to adopt and follow reasonable procedures to assure the maximum possible accuracy of Ms. Yaroma's consumer credit reports, as required by the Fair Credit Reporting Act, which it compiled, used and manipulated. Experian prepared and published false consumer credit reports, credit scores, risk factors/denial codes and other economic and prediction data evaluations about Ms. Yaroma by including information concerning Delbert and the void Western Sky consumer loan in Ms. Yaroma's consumer credit reports.

66.     Upon information and belief, Experian failed to conduct a reasonable reinvestigation of Ms. Yaroma's dispute concerning the negative credit information furnished by Delbert in connection with Ms. Yaroma and the Western Sky consumer loan.

67.     As a result of the Experian's failure to assure the maximum possible accuracy of Ms. Yaroma's consumer credit report and its failure to reinvestigate her dispute, the Western Sky consumer loan continues to be reported on her consumer credit report as being in collections and due and owing.

**V.    Other Litigation against Western Sky, CashCall, and Delbert**

68.     State attorneys general or other enforcement agencies from several different states have brought legal action against Western Sky, CashCall, and/or Delbert in connection with violation of their respective state's usury and lending laws, including Colorado, Florida, Georgia, Iowa, Minnesota, New York, and North Carolina.

69.     As a result of state lawsuits and enforcement actions against Western Sky, CashCall, and/or Delbert, Western Sky, CashCall, and/or Delbert have ceased doing business in the respective states or have agreed to modify loans to the consumers in the respective states.

70. As a result of state lawsuits and enforcement actions against Western Sky, CashCall, and/or Delbert, Western Sky, CashCall, and/or Delbert agreed to or were required to pay fines and compensation to consumers in the respective states.

71. As a result of state lawsuits and enforcement actions against Western Sky, CashCall, and/or Delbert, Western Sky, CashCall, and/or Delbert ceased furnishing negative credit information to consumer reporting agencies including Experian, and/or changed the negative credit information it furnished to consumer reporting agencies including Experian.

72. The Consumer Financial Protection Bureau ("CFPB") recently sued inter alia CashCall and Delbert in connection with unlicensed and usurious loans.

73. The CFPB complaint begins thusly:

> The Consumer Financial Protection Bureau brings this action against Defendants CashCall, Inc., WS Funding, LLC, [and] Delbert Services Corporation…under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a), 5564(a). Defendants purchased, serviced, and collected consumer-installment loans that state laws rendered void or limited the consumer's obligation to repay. As a result, Defendants took money from consumers that those consumers did not owe and typically could ill-afford to lose.

74. The state and federal actions against Western Sky, CashCall, and/or Delbert are all public records freely available on the internet and through other sources.

## **CLAIMS FOR RELIEF**

**I.   Violations of the Fair Debt Collection Practices Act**

75. The allegations set forth in the paragraphs above are re-alleged and incorporated by reference as if fully set forth herein.

76. Delbert Services Corporation violated the FDCPA by, including but not limited to:

**(i)**   Failing to provide Ms. Yaroma with the information required by 15 U.S.C. § 1692g in initial communication with Ms. Yaroma concerning the Western Sky consumer loan or within five days of its initial communication with her;

**(ii)**   Attempting to collect a void loan from Ms. Yaroma, *i.e.* attempting to collect a debt from Ms. Yaroma that she does not owe. This unlawful conduct violates 15 U.S.C. § 1692e, 15 U.S.C. § 1692f, and/or multiple subsections of each section; and

**(iii)**   Falsely representing the amount of the Western Sky consumer loan in letters and

emails sent to Ms. Yaroma and in the negative credit information concerning Ms. Yaroma and the Western Sky consumer loan that it furnished to one or more consumer reporting agencies including Experian Information Solutions, Inc. This unlawful conduct violates 15 U.S.C. § 1692e and multiple subsections of this section including 15 U.S.C. § 1692e(2), 15 U.S.C. § 1692e(8), and 15 U.S.C. § 1692e(10).

## II. Violations of the Fair Credit Reporting Act

77. The allegations set forth in the paragraphs above are re-alleged and incorporated by reference as if fully set forth herein.

### A. Claims against Delbert

#### i. Violation of 15 U.S.C. § 1681n

78. After being informed by one or more consumer reporting agencies that Ms. Yaroma disputed the accuracy of the information it was providing, Delbert willfully failed to conduct a proper investigation of the Ms. Yaroma's disputes, filed with Experian, that Delbert was furnishing negative credit information about the void Western Sky consumer loan and a debt that she did not owe.

79. Delbert willfully failed to review all relevant information purportedly provided by such consumer reporting agencies to Delbert in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

80. Delbert willfully failed to direct such consumer reporting agencies to delete inaccurate information about Ms. Yaroma pertaining to the alleged Western Sky consumer loan as required by 15 U.S.C. § 1681s-2(b)(C).

81. Ms. Yaroma has a private right of action to assert claims against Delbert arising under 15 U.S.C. § 1681s-2(b).

82. Delbert is liable to Ms. Yaroma for the actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681n.

#### ii. Violation of 15 U.S.C. § 1681o

83. After being informed by one or more consumer reporting agencies that Ms. Yaroma disputed the accuracy of the information it was providing Delbert negligently failed to conduct a proper investigation of the Ms. Yaroma's dispute, filed with Experian, that Delbert was furnishing negative credit information about the void Western Sky consumer loan and a debt that she did not owe.

84. Delbert negligently failed to review all relevant information purportedly provided by such consumer reporting agencies to Delbert in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

85. Delbert negligently failed to direct such consumer reporting agencies to delete inaccurate information about Ms. Yaroma pertaining to the Western Sky consumer loan as required by 15 U.S.C. § 1681s-2(b)(C).

86. Ms. Yaroma has a private right of action to assert claims against Delbert arising under 15 U.S.C. § 1681s-2(b).

87. Delbert is liable to Ms. Yaroma for the actual damages she has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o.

**B.    Claims against Experian Information Solutions, Inc.**

**i.    Willful Failure to Employ Reasonable Procedures to Ensure Maximum Accuracy of Ms. Yaroma's Credit Reports in Violation of 15 U.S.C. § 1681e(b)**

88. The allegations set forth in the paragraphs above are re-alleged and incorporated by reference as if fully set forth herein.

89. Experian regularly engages in the practice of assembling and evaluating consumer credit information for the purpose of preparing consumer reports, as that term is defined in 15 U.S.C. § 1681a(d), commonly referred to as Credit Reports, and furnishing these Credit Reports to third parties.

90. Experian uses means and facilities of interstate commerce for the purpose of preparing and furnishing Credit Reports and, hence, is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f).

91. In preparing Credit Reports, Experian failed to use reasonable procedures to, as required by law, "assure maximum possible accuracy" of information relating to the Delbert/Western Sky consumer loan debt in violation of 15 U.S.C. § 1681e(b).

92. As a result of Experian's failure to use reasonable procedures in accordance with the requirements of 15 U.S.C. § 1681e(b), Experian erroneously reported negative credit information concerning the Delbert/Western Sky consumer loan debt that appeared on Ms. Yaroma's consumer credit reports.

93. Experian's failure to comply with the requirements of 15 U.S.C. § 1681e(b) is willful within the meaning of 15 U.S.C. § 1681n(a).

94. As a result of Equifax, Experian, and Trans Union's willful noncompliance with the requirements of 15 U.S.C. § 1681e(b), Ms. Yaroma is entitled to actual, statutory, punitive damages, and her reasonable attorney's fees and costs under 15 U.S.C. § 1681n(a).

        ii.    **Negligent Failure to Employ Reasonable Procedures to Ensure Maximum Accuracy of Ms. Yaroma's Credit Reports in Violation of 15 U.S.C. § 1681e(b)**

95. The allegations set forth in the paragraphs above are re-alleged and incorporated by reference as if fully set forth herein.

96. Experian regularly engages in the practice of assembling and evaluating consumer credit information for the purpose of preparing consumer reports, as that term is defined in 15 U.S.C. § 1681a(d), commonly referred to as Credit Reports, and furnishing these Credit Reports to third parties.

97. Experian uses means and facilities of interstate commerce for the purpose of preparing and furnishing Credit Reports and, hence, each is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f).

98. In preparing Credit Reports, Experian failed to use reasonable procedures to, as required by law, "assure maximum possible accuracy" of information relating to the Delbert/Western Sky consumer loan in violation of 15 U.S.C. § 1681e(b).

99. Experian's failure to comply with the requirements of 15 U.S.C. § 1681e(b) is negligent within the meaning of 15 U.S.C. § 1681o(a).

100. As a result of Experian's failure to use reasonable procedures in accordance with the requirements of 15 U.S.C. § 1681e(b), Experian erroneously reported negative credit information concerning the Delbert/Western Sky consumer loan debt that appeared on Ms. Yaroma's consumer credit reports.

101. As a result of Experian's negligent noncompliance with the requirements of 15 U.S.C. § 1681e(b), Ms. Yaroma is entitled to actual damages and her reasonable attorney's fees and costs under 15 U.S.C. § 1681o(a).

        iii.    **Violation of 15 U.S.C. 1681i(a)**

102. The allegations set forth in the paragraphs above are re-alleged and incorporated by reference as if fully set forth herein.

103. Experian failed to properly reinvestigate Ms. Yaroma's dispute and, as a result, Experian continued to prepare and publish false consumer reports.

104. Experian failed to use reasonable procedures to reinvestigate Ms. Yaroma's dispute and, likewise, took inadequate action to correct plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation.

105. Experian failed to take necessary and reasonable steps to prevent further inaccuracies from entering Ms. Yaroma's credit file data and such false data continued to be posted as new consumer credit reports were prepared, issued and disseminated by Experian and relayed for further use, reliance and publication by their subscribers.

106. Experian failed to adopt and follow reasonable procedures to assure the proper reinvestigation, accuracy, deletion and/or suppression of false data appearing on Ms. Yaroma's consumer reports and as contained in their consumer reporting data bank, as required by the Fair Credit Reporting Act.

107. Experian willfully, or alternatively, negligently, violated the Fair Credit Reporting Act, 15 U.S.C. 1681i(a).

108. As a result of Experian's willful noncompliance with the requirements of 15 U.S.C. § 1681i(a), Ms. Yaroma is entitled to actual, statutory, punitive damages, and her reasonable attorney's fees and costs under 15 U.S.C. § 1681n(a).

109. As a result of Experian's negligent noncompliance with the requirements of 15 U.S.C. § 1681e(b), Ms. Yaroma is entitled to actual damages and her reasonable attorney's fees and costs under 15 U.S.C. § 1681o(a).

### III. Violations of the Kentucky Consumer Protection Act

110. The allegations set forth in the paragraphs above are re-alleged and incorporated by reference as if fully set forth herein.

111. Ms. Yaroma used the funds from the Western Sky consumer loan for personal, family and/or household purposes.

112. The solicitation and making of consumer loans constitutes "trade" and/or "commerce" as defined by the Kentucky Consumer Protection Act.

113. The solicitation and making of consumer loans at usurious rates is an "[u]nfair, false, misleading, or deceptive" act and/or practice in "the conduct of trade or commerce" that violates the Kentucky Consumer Protection Act. KRS 367.170.

114. Ms. Yaroma has an ascertainable loss as the result of Western Sky Financial, LLC and/or CashCall, Inc.'s violations of KRS 367.170. In particular, Ms. Yaroma paid both principal and $1,168.24 in illegal and usurious interest on the void Western Sky consumer loan.

115. Ms. Yaroma is entitled to recovery of her actual damages, punitive damages, and reasonable attorney's fees and costs under KRS 367.220(1).

## IV. Declaratory Relief

116. Western Sky Financial, LLC and/or CashCall, Inc. originated the void and unlawful Western Sky consumer loan to Ms. Yaroma.

117. An actual case and controversy exists between Ms. Yaroma and Western Sky and/or CashCall in connection with the void and unlawful Western Sky consumer loan.

118. The Court should DECLARE that the Western Sky consumer loan is null and void and unenforceable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Monica Yaroma requests that the Court grant her the following relief:

1. Award Plaintiff actual damages including but not limited to return of $3,693.24 that Ms. Yaroma has paid on the Western Sky consumer loan;

2. Award Plaintiff maximum statutory damages against Delbert Services Corporation; Experian Information Solutions, Inc.; and Western Sky Financial, LLC;

3. Award Plaintiff punitive damages against Defendants;

4. Award Plaintiff reasonable attorney's fees and costs;

5. Declare that the Western Sky consumer loan is null and void; and

5. Such other relief as may be just and proper.

Respectfully submitted,

/s/ James H. Lawson
**James H. Lawson**
*Lawson at Law, PLLC*
115 S. Sherrin Avenue
Suite 4
Louisville, KY 40207
Tel:   (502) 473-6525
Fax:   (502) 473-6561
james@kyconsumerlaw.com